IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DUANE MILLER,                    )
        Plaintiff,            )
                      )
                      )
        vs.                   )        Civil Action No. 11-887
                      )
KEYSTONE BLIND ASSOCIATION/      )
TPM,                             )
        Defendant.            )

MEMORANDUM OPINION

Plaintiff, Duane Miller, brings this action against Defendant, Keystone Blind

Association/TPM (KBA), alleging claims of racial discrimination in violation of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (Title VII), arising out of KBA's

October 2009 decision to promote a less qualified white employee to the position of Lead

Attendant and its August 23, 2010 decision to demote him from a Lead Attendant position to an

Attendant position.

Currently pending before the Court for disposition is a motion for summary judgment,

filed by Defendant.  For the reasons that follow, the motion will be granted.

Facts[1]

KBA is a not-for-profit organization with headquarters in Sharon, Pennsylvania.  It

provides various vocational services across the Commonwealth, in addition to various services

---

[1]      These facts are taken from Defendant's Concise Statement of Material Facts (ECF No. 42), which contains numbered paragraphs and citations to the record in accordance with Local Rule 56.1(B)(1).  Plaintiff's Response (ECF No. 45) does not contain numbered paragraphs and citations to the record, as required by Local Rule 56.1(C)(1).  Pursuant to the Local Rules, these facts should be deemed admitted.  W.D.PA.LR. 56.1(E).  Moreover, Plaintiff does not appear to contest Defendant's facts.  Rather, he argues that the proper procedures were not followed.  This argument is discussed below.

for those who are blind or visually impaired.  (Dill Aff. ¶ 2.)[2]  Plaintiff began employment in

January 2005 as an Attendant.  His supervisor was Raymond "Pete" Roupe.  (Miller Dep. at 21,

32;[3] ECF No. 43 Ex. B.)  When he was hired, Plaintiff received an Employee Manual, which

included a sexual harassment policy indicating that "[a]llegations of sexual harassment, which

are brought to the attention of management, will [be] promptly and thoroughly investigated.

Employees found to have engaged in sexual harassment will be subject to discipline up to [and]

including termination."  (Miller Dep. at 31-33; ECF No. 43 Exs. F, N.)  In addition, the

Employee Manual informed him that his employment was at-will and that he could be terminated

at any time, the Safety Policy Acknowledgment indicated that he agreed to "a commitment to

making [the] work place a safe environment in every way possible," and stated that "any willful

violations of the safety policies and guidelines will result in disciplinary action, possibly

termination."  (ECF No. 43 Exs. E, F.)  Finally, Plaintiff received the employee handbook, which

noted that "an employee who does not display satisfactory performance on the job may be

dismissed in certain cases without resorting to the steps set forth in this policy" and that "[t]here

may be situations … in which the seriousness of the offense justifies the omission of one or more

steps in the procedure.  Likewise, there may be times when the Human[] Resource Department

may decide to repeat a disciplinary step."  (ECF No. 43 Ex. Q; Miller Dep. at 50-51.)

Plaintiff alleges that KBA discriminated against him in October 2009 when it promoted

Leon Petrich, a white employee with less seniority, into the position of Lead Attendant, that

Petrich left the position and KBA did not notify him even though it was aware of his interest in

---

[2]     Def.'s App. (ECF No. 43) Ex. A.
[3]     ECF No. 43 Ex. D.

it, and that he had to call a vocational specialist in order to get the job.  (ECF No. 44 & No. 47 Exs. 1-4.)

Plaintiff worked as an Attendant at the Bridgeville Rest Areas on Interstate 79 until March 12, 2010, when he was promoted to Lead Attendant for the same areas.  (Miller Dep. at 28; Dill Aff. ¶¶ 10-12; Kurdupski Aff. ¶¶ 4-5[4].)  Gary Holder became his supervisor and Holder reported to Operations Manager Evelyn Kurdupski.  (Miller Dep. at 31, 33; Holder Aff. ¶ 1;[5] Kurdupski Aff. ¶¶ 2-3; ECF No. 43 Ex. C.)  As site superintendent, Plaintiff's job duties included doing the payroll, the scheduling, ordering supplies, conducting safety meetings and listening to complaints from other employees.  (Miller Dep. at 30.)

On August 11, 2010, Holder and Kurdupski discussed the need for a new Lead Attendant at Plaintiff's sites.  Site employees and maintenance employees had complained that Plaintiff sat on the picnic tables instead of working.  He was also consistently late in preparing and turning in required paperwork.  (Kurdupski Aff. ¶ 6; ECF No. 43 Ex. G.)  On August 12, 2010, Kurdupski received complaints from two maintenance men who had made repairs at Interstate 79 Bridgeville rest areas.  They reported Plaintiff sitting on picnic tables while the other attendants worked.  (Kurdupski Aff. ¶ 8; ECF No. 43 Ex. G.)

On August 13, 2010, Kurdupski[6] visited Site 11, where Plaintiff was Lead Attendant.  He was taking a lunch break at 1:20 p.m., in violation of the rules, because lunch was scheduled for 12:00 p.m., on second shift.  Plaintiff was instructed to follow the break schedule.  (Kurdupski

---

[4]     ECF No. 43 Ex. H.
[5]     ECF No. 43 Ex. O.
[6]     Holder was on vacation from August 12, 2010 through August 22, 2010 and while he was away, Kurdupski fulfilled his job responsibilities.  (Holder Aff. ¶¶ 3-4; Kurdupski Aff. ¶ 7.)

Aff. ¶ 9; ECF No. 43 Ex. I; Dill Aff. ¶ 13.)

On that same date, Sharell Brown, who had recently been hired by KBA, reported to Kurdupski that Plaintiff made inappropriate comments and treated her unfairly.  Specifically, she indicated that Plaintiff asked her for personal information, including details of her sexual relations with her boyfriend, using explicit language while at work, that he requested hugs from her, that he asked her about her underwear, that he divulged other employee's personal information to her and that he used explicit language to describe his genitals and how he performed in bed.  (Brown Dep. at 6, 9-10, 12;[7] Kurdupski Aff. ¶ 10; ECF No. 43 Ex. K.)  As a result, Brown did not feel comfortable working with Plaintiff and refused to work with him anymore.  (Brown Dep. at 9-10, 14-15.)  She also participated in a conference call with Thomas Dill, Vice President of Human Resources, in which they discussed her complaints.  (Dill Aff. ¶ 20.)  In light of the complaint, Kurdupski switched Brown's schedule with that of Carolyn Isenberg for the period of August 16-17, 2010.  (Kurdupski Aff. ¶ 11.)

Also in August 2010, Carolyn Isenberg, a KBA employee since 2007, refused to work with Plaintiff due to his harassing behavior.  Specifically, she stated that Plaintiff told her explicit details of his girlfriend and their "sexcapades," that he questioned Isenberg about her boyfriend and their relationship, that he asked her personal questions about her underwear and that on one occasion he began rubbing her neck and shoulders and after she pulled away he began treating her differently and yelled at her repeatedly.  (Isenberg Dep. at 6-7, 9-15, 17.)[8]  She prepared a written statement regarding Plaintiff's behavior on August 16, 2010 and gave it to Kurdupski.

---

[7]     ECF No. 43 Ex. J.
[8]     ECF No. 43 Ex. L.

(ECF No. 43 Ex. M.)  Isenberg told Holder that she no longer felt safe with Plaintiff and Holder changed Isenberg's schedule so that she would not have to work with him.  She also participated in a conference call with Thomas Dill, Vice President of Human Resources, in which they discussed her complaints.  (Isenberg Dep. at 9-12, 17-18; Dill Aff. ¶ 21; Kurdupski Aff. ¶ 12.)  Kurdupski moved both Brown and Isenberg to a different rest area, where they would not encounter Plaintiff.  (Kurdupski Aff. ¶ 13.)

Kurdupski notified human resources about the complaints of sexual harassment regarding Plaintiff, and she was directed to obtain statements from each witness.  She obtained statements and turned them in to the human resources department.  (Kurdupski Aff. ¶¶ 14-15; ECF No. 43 Ex. G.)

On August 17, 2010, Kurdupski visited Interstate 79 Bridgeville rest area southbound, where she and maintenance workers witnessed Plaintiff sitting on picnic tables while the other attendants performed the job responsibilities.  Plaintiff was instructed that a better work performance was required.  (Kurdupski Aff. ¶¶ 16-17; Dill Aff. ¶ 14; ECF No. 43 Ex. I.)

On August 19, 2010, Kurdupski hand delivered the Notice of Disciplinary Action to Plaintiff, notifying him of his two separate rule violations.  He signed the written reprimand, but disagreed with it, as he indicated that he was performing an assignment which forced his lunch breach to occur later in the day.  However, he did indicate that he would perform his job "much better."  (Kurdupski Aff. ¶¶ 22-23; ECF No. 43 Ex. I; Miller Dep. at 45; Dill Aff. ¶ 15.)

When Holder returned from vacation on August 23, 2010, Kurdupski spoke with him concerning the Disciplinary Notice and allegations of Plaintiff's sexual harassment of others.  Holder recommended that Plaintiff be demoted to the position of Attendant and Kurdupski

5

agreed.  (Kurdupski Aff. ¶¶ 24-26; Holder Aff. ¶¶ 5-8; Dill Aff. ¶ 22.)

Dill had conference calls with Brown and Isenberg, reviewed Plaintiff's file and spoke with Holder, Kurdupski and Allen Connely (Vice President of Operations and Kurdupski's direct supervisor) regarding Plaintiff's employment.  (Dill Aff. ¶¶ 17-21; ECF No. 43 Ex. C.)  Dill made the decision to demote Plaintiff to the position of Attendant.  On August 23, 2010, Plaintiff was demoted.  (Dill Aff. ¶¶ 24-25; Holder Aff. ¶ 10; Kurdupski Aff. ¶ 27.)  Kurdupski visited the Bridgeville site to notify Plaintiff and he threatened a claim of discrimination.  (Kurdupski Aff. ¶¶ 28-29.)

Judy Rauso, Human Resources Director, wrote to Plaintiff to notify him of his change in status from Lead Attendant to Attendant.  Attached to the letter was a document entitled "Investigation: Incident/Concern Request for Review."  (ECF No. 43 Ex. P.)  Plaintiff was notified in the letter that if he disagreed with the demotion, he should complete the Request for Review form and return it to Dill, but he never did so.  (Dill Aff. ¶¶ 26-28; Miller Dep. at 57-58; Kurdupski Aff. ¶¶ 30-31.)

Plaintiff has admitted that if a manager had two complaints from inferior employees, this would be grounds for some form of disciplinary action.  He also agreed that KBA has an obligation to legally protect all of its employees from harassment and that it has an obligation to ensure that employees feel comfortable in the work place.  (Miller Dep. at 52-53, 80.)

As a result of the demotion, Plaintiff earns $8.00 per hour rather than $8.25 per hour.  He works the same hours.  (Miller Dep. at 74.)

Procedural History

Plaintiff initiated this case by filing a motion for leave to proceed in forma pauperis on

July 6, 2011.  The motion was granted on July 18, 2011 and the complaint was filed the same

date (ECF No. 2).  An Amended Complaint was filed on August 4, 2011 (ECF No. 4).  It alleges

that Defendant discriminated against him because of his race when it failed to promote him and

when it demoted him, in violation of Title VII.

On July 31, 2012, a motion for summary judgment was filed by the Defendant (ECF No.

40).

Summary Judgment

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving

party, "the pleadings, depositions, answers to interrogatories and admissions on file, together

with the affidavits, if any, show that there is no genuine issue of material fact and the movant is

entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  Summary judgment may be

granted against a party who fails to adduce facts sufficient to establish the existence of any

element essential to that party's case, and for which that party will bear the burden of proof at

trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial

burden of identifying evidence which demonstrates the absence of a genuine issue of material

fact.  Once that burden has been met, the non-moving party must set forth "specific facts showing

that there is a genuine issue for trial" or the factual record will be taken as presented by the

moving party and judgment will be entered as a matter of law.  Matsushita Elec. Indus. Corp. v.

Zenith Radio Corp., 475 U.S. 574, 587 (1986).  An issue is genuine only if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty-

Lobby, Inc., 477 U.S. 242, 248 (1986).

7

<u>Title VII Standards</u>

Title VII provides that it is an unlawful employment practice for an employer to

discriminate against an individual with respect to conditions of employment because of his race.

42 U.S.C. § 2000e-2(a).  In the absence of direct evidence of discrimination, a plaintiff may

establish a prima facie case of discrimination indirectly following the shifting burden analysis set

forth by the Supreme Court in <u>McDonnell Douglas v. Green</u>, 411 U.S. 792, 802 (1973) and

refined in <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 252 53 (1981).

<u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 278-79 (3d Cir. 2000).

As the Court of Appeals for the Third Circuit has stated:

> The existence of a prima facie case of employment discrimination is a
> question of law that must be decided by the Court.  It requires a showing that: (1)
> the plaintiff belongs to a protected class; (2) he/she was qualified for the position;
> (3) he/she was subject to an adverse employment action despite being qualified;
> and (4) under circumstances that raise an inference of discriminatory action...

<u>Sarullo v. U.S. Postal Serv.</u>, 352 F.3d 789, 797 (3d Cir. 2003) (footnote and citations omitted).

If the employee presents a prima facie case of discrimination, the employer must

"articulate some legitimate, nondiscriminatory reason for the [adverse employment action]."

<u>McDonnell Douglas</u>, 411 U.S. at 802.  If the employer specifies a reason for its action, the

employee must have an opportunity to prove the employer's reason for the adverse employment

action was a pretext for unlawful discrimination.  <u>Id.</u> at 804.  The Court of Appeals for the Third

Circuit has stated that:

> [T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's
> proffered  legitimate  reasons must allow a factfinder to reasonably infer that each
> of the employer's proffered non-discriminatory reasons was either a post hoc
> fabrication or otherwise did not actually motivate the employment action  (that is,
> the proffered reason is a pretext).

<u>Fuentes v. Perskie</u>, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted).

Defendant argues that: 1) Plaintiff cannot state a prima facie case of racial discrimination with respect to his demotion because he cannot demonstrate that he was qualified for the position of Lead Attendant; and 2) even if he could establish a prima facie case, it has proffered a legitimate, non-discriminatory reason for his demotion and he has not produced evidence from which the trier of fact could conclude that the reason is a pretext for unlawful racial discrimination.

Plaintiff responds that KBA did not follow the proper procedures and that he was treated differently from white employees who had complaints filed against them.  He also argues that a white employee with less seniority was promoted into the Lead Attendant position in October 2009 and that KBA discriminated against him by failing to promote him.

<u>Prima Facie Case re Demotion</u>

Defendant argues that Plaintiff cannot state a  prima facie case of racial discrimination arising out of his demotion because he has failed to point to any evidence that he was qualified for the position of Lead Attendant and he failed to properly submit paperwork and to complete tasks.  It also contends that, pursuant to the "same actor inference," he cannot establish a case of discrimination because he was promoted and then demoted by the same individual, Tom Dill. Both of these arguments are rejected.

First, Defendant promoted Plaintiff to the position of Lead Attendant, thus it cannot easily contend that he was "unqualified" for the position.  Moreover, by way of this argument, Defendant is attempting to force Plaintiff to prove that he was discriminated against in order to

9

state a prima facie case.  In other words, Defendant has referenced one of its proffered reasons

for Plaintiff's demotion in the course of articulating why he cannot state a prima facie case of

discrimination.  To require Plaintiff to rebut this reason in order to establish a prima facie case of

discrimination improperly imports into the prima facie analysis the later stages of the McDonnell

Douglas test.

> As cogently explained by the Sixth Circuit:
>
> a court may not consider the employer's alleged nondiscriminatory reason for
> taking an adverse employment action when analyzing the prima facie case.  To do
> so would bypass the burden-shifting analysis and deprive the plaintiff of the
> opportunity to show that the nondiscriminatory reason was in actuality a pretext
> designed to mask discrimination.

Wexler v. White's Furniture, Inc., 317 F.3d 564, 574 (6th Cir. 2003) (en banc) (citing Cline v.

Catholic Diocese of Toledo, 206 F.3d 651, 660-61 (6th Cir. 2000)).  See also Thomas v.

Denny's, Inc., 111 F.3d 1506, 1510 (10th Cir. 1997) ("relying on a defendant's reasons for the

adverse employment action as a basis for ruling against a plaintiff at the prima facie stage raises

serious problems under the McDonnell Douglas framework because it frustrates a plaintiff's

ability to establish that the defendant's reasons were pretextual."); Davenport v. Riverview

Gardens Sch. Dist., 30 F.3d 940, 944 (8th Cir. 1994) ("by requiring plaintiff to disprove the

alleged conduct violations in order to establish his prima facie case, the district court essentially

required plaintiff, at the outset, to disprove defendant's alleged business reasons for its adverse

employment action–in other words, to prove pretext and the ultimate issue of intentional

discrimination.  The prima facie case is not so onerous.")

Second, the Court of Appeals for the Third Circuit has rejected the "same actor

inference."  See Waldron v. SL Industries, Inc., 56 F.3d 491, 496 n.6 (3d Cir. 1995).  The mere

fact that Tom Dill promoted and demoted Plaintiff does not demonstrate that KBA could not have acted with discriminatory intent.

<u>Defendant's Legitimate Reasons and Plaintiff's Evidence of Pretext</u>

Thus, Plaintiff has stated a prima facie case of racial discrimination.  Nevertheless, Defendant has pointed to legitimate, non-discriminatory reasons for Plaintiff's demotion, namely his failures to properly submit paperwork, occasions on which he was observed sitting on picnic tables not working and the incidents in which he sexually harassed female employees.  (Dill Aff. ¶¶ 13-27; Kurdupski Aff. ¶¶ 8-28; Holder Aff. ¶¶ 2, 5-9; ECF No. 43 Exs. G, I, K, M, N, P.)  It has thus satisfied its relatively light burden of production.  <u>Krouse v. American Sterilizer Co.</u>, 126 F.3d 494, 500-01 (3d Cir. 1997).

The burden then shifts back to Plaintiff to proffer evidence from which the trier of fact could conclude that Defendant's reason is a pretext for unlawful racial discrimination.  However, the "issue is whether discriminatory animus motivated [the decision], not whether [KBA] is wise, shrewd, prudent or competent."  <u>Fuentes</u>, 32 F.3d at 765.  Thus, Plaintiff's own subjective feelings that the decision was incorrect are insufficient to demonstrate pretext.

Plaintiff argues that KBA did not follow the sequential steps of its disciplinary policy. However, KBA has proffered evidence that the policies themselves contain clauses indicating that there may be occasions in which the seriousness of the offense justifies the omission of one or more of the steps.  (Miller Dep. at 50-51; ECF No. 43 Ex. Q.)  He also appears to be suggesting that proper procedure were not followed because the alleged victims (Isenberg and Brown) did not report incidents of sexual harassment to him, the harasser.  (Miller Dep. at 45-46 ECF No. 47-1 Ex. A.)  However, the policy itself states that "[a]ny incidents of harassment must

11

be immediately reported to supervisor/foreperson or other management representative." (ECF No. 43 Ex. N at 2.) Isenberg and Brown properly reported the incidents to Kurdupski, a management representative, and they can hardly be faulted for failing to report Plaintiff's own harassment to him. Finally, he contends that KBA has misrepresented that it does not have a tape recording of a telephone conversation in which Tom Dill indicated that he did not have any findings. However, KBA documented the complaints of harassment and the investigation that followed and this Court does not operate as a super-personnel department that reexamines an entity's business decisions. Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 332 (3d Cir. 1995) (citation omitted).

Plaintiff argues that he was treated differently from other similarly situated white employees. Defendant indicates that he suggests that there may have been another Lead Attendant (a white woman) who was written up for yelling at other employees but was not demoted. (ECF No. 41 at 11-12.)[9] However, he has not pointed to any other employee who was reprimanded for poor job performance and accused of sexual harassment but was not demoted. "At summary judgment, a plaintiff cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." Jones v. United Parcel Serv., 214 F.3d 402, 407 (3d Cir. 2000) (citation omitted). The Court of Appeals has held that a plaintiff "cannot selectively choose a comparator" in order to satisfy her burden of demonstrating that similarly situated persons were treated differently. Simpson v. Kay Jewelers, Inc., 142 F.3d 639, 645 (3d Cir. 1998). In addition, "the focus is on the particular

---

[9]     Defendant cites Plaintiff's deposition at page 62, but has not placed this page into the record.

criteria or qualifications identified by the employer as the reason for the adverse action." <u>Id.</u> at 647.  Plaintiff cannot show pretext by pointing to the Lead Attendant who yelled at other employees but who did not engage in sexual harassment.  <u>Goosby v. Johnson & Johnson Med., Inc.</u>, 228 F.3d 313, 322 (3d Cir. 2000).  Nor can he rely on his own opinion about how KBA should have treated employees in various situations.  <u>Simpson</u>, 142 F.3d at 647.

In addition, Tom Dill has testified that "David J. Prenatt, a white Lead Attendant, was demoted from Lead Attendant to Attendant because of his failure to complete the proper paperwork, including documenting disciplinary actions of employees and inappropriate remarks to female employees."  (Dill Aff. ¶ 32.)  Thus, Defendant has submitted evidence that Plaintiff was treated no differently than white employees who engaged in similar behavior.

Plaintiff has failed to point to such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons."  <u>Fuentes</u> 32 F.3d at 765. Therefore, the motion for summary judgment will be granted.

<u>Failure to Promote Claim</u>

Plaintiff also contends that KBA discriminated against him in October 2009 when it promoted Leon Petrich, a white employee with less seniority, into the position of Lead Attendant, that Petrich left the position and KBA did not notify him even though it was aware of his interest in it, and that he had to call a vocational specialist in order to get the job.  (ECF No. 44 & No. 47 Exs. 1-4.)  Although Defendant has not specifically addressed this allegation, based upon the record Plaintiff cannot proceed with it.

In its motion to dismiss, Defendant argued, inter alia, that Plaintiff had failed to allege that he exhausted his administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) or the Pennsylvania Human Relations Commission (PHRC) prior to bringing this suit.  (ECF No. 13 at 2.)  In response, Plaintiff stated that he had filed a charge of discrimination with the EEOC on August 24, 2010, that an investigation took place and that on April 18, 2011, he was issued a Notice of Right to Sue Letter.  He attached his Charge of Discrimination and the Dismissal and Notice of Rights to his response.  (ECF No. 20 Exs. 1, 2.)

The EEOC Charge states that, "[o]n or about August 23, 2010, I was demoted from my position of Lead Attendant/Site Supervisor to the position of Attendant."  It also lists the date(s) of discrimination as being from August 23, 2010 to August 23, 2010.  (ECF No. 20-2.)  Thus, it is clear from the EEOC Charge, which is part of the record in this case, that Plaintiff exhausted his administrative remedies <u>only</u> as to his claim arising out of the August 23, 2010 demotion, not the failure to promote claim.  Therefore, he cannot proceed with the failure to promote claim.

Based on the foregoing, the motion for summary judgment filed by Defendant, Keystone Association/TPM, shall be granted.  An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DUANE MILLER,                          )
       Plaintiff,                      )
                           )
       vs.                             )      Civil Action No. 11-887
                           )
KEYSTONE BLIND ASSOCIATION/            )
TPM,                                   )
       Defendant.                      )

ORDER

    AND NOW, this 8th day of January, 2013, for the reasons explained above,

    IT IS HEREBY ORDERED that the motion for summary judgment filed by Defendant,

Keystone Blind Association/TPM (ECF No. 40), is granted.

    IT IS FURTHER ORDERED that pursuant to Rule 4(a)(1) of the Federal Rules of

Appellate Procedure if the plaintiff desires to appeal from this Order he must do so within thirty

(30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P.

                                    s/Robert C. Mitchell_____
                                    ROBERT C. MITCHELL
                                    United States Magistrate Judge

cc:    Duane Miller
       #8 Sharon Court
       Pittsburgh, PA 15235